## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

RENAISSANCE SPECIALTY INSURANCE, LLC,
THE RENAISSANCE GROUP, LLC &
TRADESMAN PROGRAM MANAGERS, LLC,

**CASE NO. 5:24-CV-00392**

*Plaintiffs,*

v.

CHARLES LANDRUM,
CHASGATR CONSULTANTS INC.,
ROKSTONE UNDERWRITING MANAGERS LLC
& ROKSTONE GROUP LTD.,

*Defendants.*

## VERIFIED AMENDED COMPLAINT
## FOR INJUNCTIVE AND OTHER RELIEF
## AND DEMAND FOR A JURY TRIAL

Plaintiffs, Renaissance Specialty Insurance, LLC, The Renaissance Group,

LLC and Tradesman Program Managers, LLC, (collectively, "Plaintiffs") by and

through undersigned counsel, as and for their Verified Amended Complaint for

Injunctive and Other Relief against Defendants, Charles Landrum, Chasgatr

Consultants Inc. and Rokstone Sports and Leisure LLC, allege as follows:

CASE NO. 5:24-CV-00392

_____

## JURISDICTION AND VENUE

1. Plaintiff, Renaissance Specialty Insurance, LLC ("RSI"), is a limited liability company organized under the laws of the State of Indiana with a principal place of business at 10 W. Carmel Drive Suite 120, Carmel, IN, 46032.

2. The members of RSI are Plaintiffs, Tradesman Program Managers, LLC ("TPM") and The Renaissance Group LLC ("Renaissance").

3. TPM is a limited liability company organized under the laws of the State of New York with a principal place of business at 15 Davis Avenue, Poughkeepsie, NY 12601.

4. The members of TPM are: Daniel G. Hickey Jr., who is domiciled in and is a citizen of the State of New York; Rick Ecklord, who is domiciled in and is a citizen of the State of New Jersey; and Thomas F. Kelly, III, who is domiciled in and is a citizen of the State of New York.

5. Renaissance is a limited liability company organized under the laws of the State of Colorado with a principal place of business at 704 State 135 Rd. S, Apt D-400, Greenwood, IN 46143.

6. The sole member of Renaissance is Greg Mosher, who is domiciled in and is a citizen of the State of Indiana.

7. Defendant, Charles Landrum ("Landrum"), is domiciled in and is a citizen of the State of Florida.

2

CASE NO. 5:24-CV-00392

8. Defendant, Chasgatr Consultants, Inc. ("Chasgatr"), is a corporation organized under the laws of the State of Florida with a principal place of business at 5034 Sander Street, The Villages, Florida 32163.

9. Defendant, Rokstone Sports and Leisure LLC ("Rokstone") is a limited liability company organized under the laws of the State of Delaware.

10. Upon information and belief, Rokstone's principal place of business is in the State of Florida.

11. The members of Rokstone are presently unknown.

12. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds the jurisdictional threshold of $75,000.

13. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331 because this case presents a federal question under 18 U.S.C. § 1832, *et seq.*

14. Venue is proper in this Judicial District because Defendants reside within this District and/or do business in this District.

## FACTS COMMON TO ALL CLAIMS AGAINST ALL DEFENDANTS

### A. RSI's Business

15. RSI is a managing general agency that was created for the purpose of underwriting and providing related insurance services for the sports, leisure, and entertainment industries.

3

CASE NO. 5:24-CV-00392

16.   RSI underwrites property, casualty, automotive, and related insurance coverage for a specialized and niche market, which includes live music and sporting events; sports and entertainment venues and complexes; sports teams, associations, and governing bodies; casinos and gaming operations; amusement and water parks; and a wide variety of special events, shows, festivals, and celebrations.

17.   RSI's customers and clients are comprised of insurance brokers; insureds who purchase policies from RSI and its brokers; insurers that are licensed to underwrite in the United States; reinsurers; reinsurance brokers; and other entities with whom RSI enters into agreements to facilitate its business.

18.   In particular, RSI enters into written agreements with insurance brokers across the country who work with RSI to bind coverage for a variety of risks in the live event and leisure market in exchange for a percentage of premium paid by each insured.

19.   RSI also enters into program administration agreements, and similar agreements, with insurers that are licensed to underwrite coverage in all 50 states, which insurers are commonly referred to as fronting carriers.

20.   The fronting carriers permit RSI, as the managing general agent, to underwrite insurance policies by using their licenses in exchange for a percentage of premium paid by each insured.

4

CASE NO. 5:24-CV-00392

_____

21.    RSI also has business relationships with reinsurers and reinsurance brokers, each of whom are also paid a percentage of premium paid by each insured through quota share reinsurance agreements with the fronting carrier for the insurance programs administered by RSI.

22.    RSI relies upon certain confidential information and documents, proprietary methods, and trade secrets to maintain a competitive advantage and to distinguish itself from its competitors.

23.    Confidential information and documents RSI relies upon include, but are not limited to, insureds' loss runs; broker and reinsurance broker lists; policy renewal dates; the terms and conditions of broker agreements, program administration and similar agreements, and quota share reinsurance and similar agreements; RSI and its insureds' financial data and information; and employee information.

24.    RSI's proprietary information and trade secrets include, but are not limited to, the method of calculating premium; pricing algorithms; marketing strategy; geographic and program expansion; RSI's work product, including the terms and conditions of confidential agreements with brokers, fronting carriers, and reinsurers; risk evaluation through use of confidential insured information and data; and strategic business growth and expansion.

CASE NO. 5:24-CV-00392

25.   RSI's success is due, in large part, to its historically excellent relationships with  brokers, fronting carriers, reinsurers, reinsurance brokers, and its outstanding reputation in the industry.

26.   On August 10, 2021, Plaintiffs entered into a Limited Liability Company Agreement (the "LLC Agreement").

27.   The LLC Agreement governs RSI's operations and provides for the creation of a Board of Managers ("Board"), which is responsible for the day-to-day management of RSI.

28.   TPM has a majority membership interest and ownership of RSI, and therefore, as the majority controlling member, has sustained damages as a proximate and direct result of Defendants' conduct.

**B. Landrum's Role With RSI**

29.   On August 9, 2021, RSI entered into a Consulting Agreement with Chasgatr (the "Agreement").

30.   Landrum is the President of Chasgatr.

31.   The Agreement was executed August 9, 2021, by Greg Mosher on behalf of RSI and by Landrum on behalf of himself and Chasgatr.

32.   The term of the Agreement was for one (1) year to be renewed automatically per the terms and conditions set forth in section 6 of the Agreement.

CASE NO. 5:24-CV-00392

_____

33.    Pursuant to the Agreement, Landrum was appointed as RSI's Executive Underwriting Officer and provided, among other things, underwriting and executive business consulting services to RSI.

34.    The only person who provided services to RSI under the Agreement was Landrum.

35.    In his role as Chief Underwriting Officer, Landrum directed and oversaw all aspects of RSI's underwriting functions, including, but not limited to, assisting with the development of RSI's underwriting procedures, policy forms and endorsements; developing new and best practices; and maintaining and growing key relationships with RSI's brokers, insureds, RSI's fronting carrier, reinsurers, and reinsurance brokers.

36.    Landrum also coordinated field underwriting and RSI's field sales force, and was responsible for establishing overall direction and strategic initiatives for RSI's unique and niche insurance programs.

37.    In addition to serving as RSI's Chief Underwriting Officer, Landrum was a member of RSI's Board.

38.    As RSI's Chief Underwriting Officer and a Board member, Landrum worked directly with RSI's president, Greg Mosher, and other RSI Board members and employees.

CASE NO. 5:24-CV-00392

39.    Landrum attended weekly staff meetings to discuss targeting new brokers and clients, risk assessment of existing clients, renewals of existing insureds based upon confidential loss runs, expansion of business into new geographic regions, and expansion of the program into new sports, entertainment, and leisure markets.

40.    Landrum also had unfettered access to confidential information and documents such as insureds' loss runs; broker and reinsurance broker lists; policy renewal dates; the terms and conditions of broker agreements, program administration and similar agreements, and quota share reinsurance and similar agreements; RSI and its insureds' financial data and information; and employee information.

41.    Landrum also had direct access to RSI's proprietary information and trade secrets, including RSI's method of calculating premium; pricing algorithms; marketing strategy; geographic and program expansion; risk evaluation through use of confidential insured information and data; strategic business growth and expansion; and RSI's work product, including the terms and conditions of confidential agreements with brokers, fronting carriers, and reinsurers.

42.    Maintaining the confidentiality of RSI's confidential, proprietary, and trade secret information is crucial to the company's success because unauthorized disclosure of such information would cause RSI to sustain irreparable harm and

8

CASE NO. 5:24-CV-00392

_____

to lose its competitive advantage in the marketplace, and to sustain significant damages.

43.    To prevent disclosure of RSI's valuable information, employees, consultants, and third parties are required to execute various agreements, such as the Agreement between RSI and Landrum/Chasgatr.

44.    Section 8 of the Agreement, titled No Conflict of Interest, states:

**8. <u>No Conflict of Interest</u>**

This Agreement shall not restrict Consultant from performing services for other businesses or entities; *provided*, however, that during the Term of this Agreement, Consultant shall not apply, bid, or contract for, or undertake any employment, independent contractor work, or consulting work with any competitor of the Company. The determination of which businesses constitute "competitors" of the Company shall be solely within the exclusive discretion of the Company.

45.    Section 9, titled Ownership of Work Product, states:

**9.    <u>Ownership of Work Product</u>**

Consultant hereby assigns to the Company all right, title and interest in and to any work product made, conceived, developed, written or first reduced to practice by Consultant for the Company pursuant to this Agreement, whether solely or jointly with others, during the Term of this Agreement, including all copyrights, trademarks and other intellectual property rights contained therein (the "Work Product"), and that such Work Product shall be work made for hire and that

9

CASE NO. 5:24-CV-00392

the Company shall be the sole author thereof for all purposes under applicable copyright and other intellectual property laws.

Consultant agrees to execute, at the Company's request and expense, all documents and other instruments necessary or desirable to confirm such assignment. In the event that Consultant does not, for any reason, execute such documents within a reasonable time of the Company's request, Consultant hereby irrevocably appoints the Company as Consultant's attorney-in-fact for the purpose of executing such documents on Consultant's behalf.

46.     Section 10 of the Agreement, titled Confidentiality, states:

**10.  Confidentiality**

10.1  Confidential Information includes all information identified by the Company as proprietary and confidential, which Confidential Information shall remain the sole property of the Company. Items will not be considered Confidential Information if: (a) available to public other than by a breach of an agreement by Consultant; (b) rightfully received by Consultant from a third party not in breach of any confidentiality obligation; (c) independently developed by Consultant without access to or use of the Company's Confidential Information; or (d) rightly known to Consultant at the time of disclosure.

10.2    Consultant agrees that she shall not use for any purpose or disclose to any third party any Confidential Information without the express written consent of the Company. Consultant agrees to safeguard the Confidential Information against use or disclosure other than as authorized by or pursuant to this Agreement through measures, and exercising a degree of care, which are at least as protective as those the Company exercises in safeguarding the confidentiality

CASE NO. 5:24-CV-00392

_____

of its own proprietary information, but no less than a reasonable degree of care under the circumstances. Consultant shall permit access to Confidential Information only to those individuals (a) who have entered into a written confidentiality agreement with the Company on terms equally as restrictive as those set forth herein, and (b) who require access in performance of their duties to the Company or to Consultant under this Agreement.

10.3 Consultant acknowledges that the wrongful use or disclosure of Confidential Information may result in irreparable harm for which there will be no adequate remedy at law. In the event of a breach by Consultant of her obligations under this Section 10, the Company may immediately terminate this Agreement without liability to Consultant, and may bring an appropriate legal action to enjoin such breach.

47.     Section 11 of the Agreement, titled Non-Interference with Business,

states:

**11.  <u>Non-Interference with Business</u>**

During the Term of this Agreement, and for a period of one (1) year immediately following termination of this agreement for whatever reason, Consultant shall not, either directly or indirectly, call on, solicit, do business with, or take away, or attempt to call on, solicit, do business with, or take away, any of the customers or clients of the Company on whom Consultant called on, did business with, or became acquainted with during the Term of this Agreement, either for his own benefit, or for the benefit of any other person, firm, corporation or organization; <u>provided, however, that nothing in this Section 11 shall be construed as prohibiting Consultant from competing with the Company</u>.

(underlining in original).

11

CASE NO. 5:24-CV-00392

_____

48.     Section 6.3 of the Agreement states that the provisions of sections 9, 10, and 11 survive termination of the Agreement:

> 6.3 **Survival.** The rights and obligations contained in Sections 9 ("Ownership of Work Product"), 10 ("Confidentiality) and 11 ("Non-Interference with Business") will survive any termination or expiration of this Agreement.

49.     The Agreement further states that either party may terminate the Agreement upon thirty (30) days written notice to the other party.

50.     The Agreement is governed by the laws of the State of Indiana.

51.     Landrum acknowledged in the Agreement that his "obligations under the Agreement are of a unique character that gives them particular value."

52.     Landrum also acknowledged that "[b]reach of any such obligations will result in irreparable harm and continuing damage to the Company for which there is no adequate remedy at law," and that in the event of such breach, RSI would be entitled to injunctive relief, specific performance, and such other appropriate relief.

## C. Landrum Resigns and Joins Rokstone

53.     On June 18, 2024, Landrum notified RSI that he and Chasgatr were terminating the Agreement effective July 2, 2024.

54.     In the same notice, Landrum resigned as a Board member of RSI.

CASE NO. 5:24-CV-00392

55.  On July 10, 2024, Rokstone  announced the launch of a Sports & Leisure Casualty division in the United States to be led by Landrum.

56.  Before Landrum joined Rokstone, it had no presence in the sports, leisure, and entertainment insurance market and did not offer insurance coverage for risk in that market.

57.  Rokstone issued a press release announcing Landrum's new role with the company, in which Rokstone's CEO, James Potter, stated:

> We're excited to welcome Charles to the team. The casualty market has gone through a reset on pricing; once again have an environment that is relationship driven, and few people have the breadth and depth of relationships that Charles brings with him.

(Emphasis added).

58.  The relationships referenced by Rokstone's CEO are those maintained and grown by Landrum for RSI's benefit, including relationships with brokers, insureds, fronting carriers, reinsurers and reinsurance brokers.

59.  On July 15, 2024, two RSI employees abruptly resigned.

60.  On July 16, 2024, RSI's counsel delivered a cease-and-desist letter to Landrum and Chasgatr and to demand preservation of all pertinent evidence.

61.  A copy of the letter was also sent to Rokstone, who was placed on notice of Landrum's ongoing duties to RSI and RSI's relationships with brokers, insureds, key business partners, and employees.

CASE NO. 5:24-CV-00392

62.    On July 19, 2024, another RSI employee resigned abruptly.

63.    On July 22, 2024, yet another RSI employee resigned abruptly.

64.    On July 22, 2024, Landrum responded to counsel's letter.

65.    In his response, Landrum denied using or disclosing RSI's confidential information or trade secrets and stated that he will not use or disclose such information.

66.    However, Landrum failed to deny that he has not solicited, or attempted to solicit or take away, RSI's customers or clients since terminating the Agreement.

67.    Landrum also failed to deny that he would refrain from soliciting, or attempting to solicit,  RSI's customers or clients during the one-year period following termination of the Agreement.

68.    Instead, Landrum stated that he did not solicit RSI clients or customers away from RSI "during the term of [the] Agreement."

69.    However, Landrum was silent regarding solicitation, or attempted solicitation, of RSI's clients or customers since the termination of the Agreement, including the one-year period following termination of the Agreement.

70.    Landrum also failed to deny that he has disclosed and that he shall not disclose any RSI Work Product to any third party since the termination of the Agreement.

CASE NO. 5:24-CV-00392

71.     Landrum recently contacted at least one of RSI's brokers for the purpose of soliciting business and placement of coverage with Rokstone instead of continuing coverage with RSI.

72.     Landrum and Rokstone are also attempting to enter into agreements with RSI's fronting carrier, Accredited Insurance Program Management, and reinsurers of RSI's program, including Topsail Reinsurance SPC, Ltd.

73.     The circumstances of Landrum's resignation from RSI in relation to the timing of when he joined Rokstone, the abrupt timing of RSI employees' departures, and the discussions between Landrum and brokers, RSI's fronting carrier, and reinsurers demonstrates that Landrum and Rokstone conspired to launch their own events and leisure coverage program by using RSI's relationships, confidential information, proprietary methods, trade secrets, and employees.

74.     It is also evident that Landrum and Rokstone either have used, or intend to use, RSI's Work Product to accelerate the growth of Rokstone's attempted entry into the sports, leisure, and entertainment insurance market.

75.     Moreover, because Rokstone has no presence in this insurance market, it must necessarily rely upon RSI's confidential, proprietary, and trade secret information because Landrum was hired to launch and lead the entire program.

15

CASE NO. 5:24-CV-00392

76.    As a result of the foregoing, RSI has sustained and will continue to sustain immediate and irreparable harm because Landrum and Rokstone aim to launch their own competing insurance program through use of RSI's confidential and proprietary information, through solicitation of RSI's customers and clients, and by luring RSI's employees to Rokstone, all of which is in violation of the Agreement and applicable law.

77.    In the event Landrum continues to breach the Agreement and his obligations, RSI will suffer irreparable harm, including, loss of business, loss of competitive advantage, lost profits, reputational damage, and loss of goodwill.

78.    Defendants have caused severe and permanent injury and damage to Plaintiffs in an amount to be determined but is in excess of the $75,000 jurisdictional threshold of this Court.

## CAUSES OF ACTION

### COUNT I- BREACH OF CONTRACT AS TO
### CHARLES LANDRUM AND CHASGATR CONSULTANTS, INC.

79.    Plaintiffs incorporate by reference the allegations set forth within paragraphs 1 through 78 above as corresponding paragraphs 1 through 78 of this, Count I, as if fully set forth herein.

16

CASE NO. 5:24-CV-00392

_____

80.     Landrum and Chasgatr agreed to be bound by the terms and conditions of the Agreement, including the provisions set forth within sections 8, 9, 10, and 11.

81.     On June 18, 2024, Landrum, on behalf of Chasgatr, resigned, in a manner that breached section 6.2.2 of the Agreement because he failed to give the requisite 30-day notice.

82.     Landrum resigned from RSI to lead a new Sports and Leisure Casualty insurance program for Rokstone in the United States.

83.     Landrum resigned from RSI without providing the requisite 30-day notice so he could join Rokstone as quickly as possible and begin soliciting RSI's customers and clients in violation of the Agreement and applicable law.

84.     In launching Rokstone's new insurance program, Landrum and Chasgatr have and will continue to breach the terms and conditions of the Agreement, which breach has and will continue to cause RSI to sustain irreparable harm, and permanent and severe damages.

85.     Landrum and Chasgatr have breached the terms and conditions of the Agreement, including, but not limited to, the provisions of sections 8, 9, 10, and 11 by engaging in the following conduct:

   a. Calling, soliciting, doing business with, and taking RSI's brokers, insurers, reinsurers, reinsurance brokers and insureds;

CASE NO. 5:24-CV-00392

_____

    b. Using and disclosing RSI's confidential information and documents;

    c. Using and disclosing RSI's trade secrets;

    d. Using and disclosing RSI's proprietary methodology and information;

    e. Using and disclosing RSI's confidential and proprietary work product;

    f. Using and disclosing RSI's marketing and business strategies;

    g. Using RSI's employee contacts and information; and

    h. Additional conduct to be determined during discovery that constitutes a breach of the Agreement.

86. As a result of the foregoing, Landrum and Chasgatr have caused irreparable harm, severe and permanent injury, and damage to RSI in an amount to be determined but is in excess of the $75,000 threshold of this Court.

87. Landrum and Chasgatr also orchestrated the resignation and departure of other RSI employees, which has caused additional severe and permanent injury and damage to RSI in an amount to be determined but is in excess of the $75,000 threshold of this Court.

88. Landrum's and Chasgatr's intentional, malicious, willful, and wanton conduct has caused additional severe and permanent injury and damage to RSI in

CASE NO. 5:24-CV-00392
_____

an amount to be determined but is in excess of the $75,000 jurisdictional threshold of this Court.

## COUNT II- TORTIOUS INTERFERENCE AS TO CHARLES LANDRUM AND CHASGATR CONSULTANTS, INC.

89.    Plaintiffs incorporate by reference the allegations set forth within paragraphs 1 through 78 above as corresponding paragraphs 1 through 78 of this, Count II, as if fully set forth herein.

90.    RSI has contractual and business relationships with its customers and clients, including, but not limited to, brokers, insurers, reinsurers, reinsurance brokers and insureds that work with RSI on numerous aspects of its business and operations.

91.    RSI also has contractual and business relationships with its employees.

92.    At all relevant times, Landrum and Chasgatr knew that RSI had contractual and business relationships with its brokers, insurers, reinsurers, reinsurance brokers, insureds and employees.

93.    Landrum and Chasgatr tortiously interfered with RSI's contractual and business relationships with its brokers, insurers, reinsurers, reinsurance brokers and insureds by soliciting them and/or attempting to solicit them away from RSI, in breach of the Agreement.

CASE NO. 5:24-CV-00392

94.     Landrum and Chasgatr interfered with RSI's contractual and business relationships with its employees by soliciting them away from RSI to work for Rokstone.

95.     Landrum's and Chasgatr's interference with RSIs contractual and business relationships was intentional and unjustified.

96.     Landrum and Chasgatr intentionally, maliciously, willfully, and wantonly orchestrated the resignation of RSI employees in furtherance of his scheme with Rokstone to use RSI's confidential and proprietary information and trade secrets to launch a competing insurance program.

97.     Landrum and Chasgatr successfully lured RSI employees to work for Rokstone.

98.     Based upon the foregoing, Landrum and Chasgatr tortiously interfered with RSI's contractual and business relationships, which intentional conduct has caused additional severe and permanent injury and damage to RSI in an amount to be determined but is in excess of the $75,000 jurisdictional threshold of this Court.

**COUNT III – BREACH OF INDIANA UNIFORM TRADE SECRETS ACT,
IND. CODE ANN. § 24-2-3-1, *ET SEQ.*, AS TO
CHARLES LANDRUM AND CHASGATR CONSULTANTS, INC.**

CASE NO. 5:24-CV-00392

99. Plaintiffs incorporate by reference the allegations set forth within paragraphs 1 through 78 above as corresponding paragraphs 1 through 78 of this, Count III, as if fully set forth herein.

100. Landrum and Chasgatr have misappropriated and/or have threatened to misappropriate RSI's trade secrets.

101. RSI derives independent economic value, actual or potential, from such information not being generally known to, and not being readily ascertainable by proper means.

102. Such information is the subject of efforts reasonable under the circumstances to maintain its secrecy.

103. Landrum's and Chasgatr's misappropriation of RSI's trade secrets constitutes a violation of the Indiana Uniform Trade Secrets Act, Inc. Code Ann. § 24-2-3-1, *et seq.*

104. RSI is entitled to an injunction to enjoin the threatened or actual misappropriation, as well as actual damages, exemplary damages for willful and malicious misappropriation, and attorneys' fees.

## COUNT IV – BREACH OF DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1832, *et seq.*, AS TO CHARLES LANDRUM AND CHASGATR CONSULTANTS, INC.

CASE NO. 5:24-CV-00392

105. Plaintiffs incorporate by reference the allegations set forth within paragraphs 1 through 78 above as corresponding paragraphs 1 through 78 of this, Count IV, as if fully set forth herein.

106. RSI possesses information of independent economic value that (a) was lawfully owned by RSI and (b) RSI took reasonable measures to keep secret.

107. Landrum and Chasgatr used and/or disclosed such information despite a duty to maintain its secrecy, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq.*

108. RSI is entitled to: (a) an injunction to enjoin the threatened or actual misappropriation of its trade secrets; (b) damages for actual loss caused by the misappropriation; (c) damages for unjust enrichment caused by the misappropriation; (d) damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the unauthorized disclosure of use of RSI's trade secrets; and (e) exemplary damages for willful and malicious misappropriation.

### COUNT V – BREACH OF FIDUCIARY DUTY
### AS TO CHARLES LANDRUM

109. Plaintiffs incorporate by reference the allegations set forth within paragraphs 1 through 78 above as corresponding paragraphs 1 through 78 of this, Count V, as if fully set forth herein.

22

CASE NO. 5:24-CV-00392

110. During his tenure with RSI, Landrum served as RSI's Chief Underwriting Officer and was a member of RSI's Board of Managers.

111. In these roles, Landrum owed fiduciary duties to Plaintiffs, among other things, not to act in his own self-interest or to appropriate business opportunities.

112. Further, to the extent Landrum is deemed to have been an employee of RSI, Landrum owed Plaintiffs a fiduciary duty of loyalty.

113. While still serving as RSI's Chief Underwriting Officer and as a member of RSI's Board of Managers, Landrum breached his fiduciary duties to Plaintiffs by conspiring with Rokstone, and potentially other entities, to launch a competing sports and leisure program.

114. While still serving as RSI's Chief Underwriting Officer and as a member of RSI's Board of Managers, Landrum breached his fiduciary duties to Plaintiffs by soliciting RSI employees to terminate their relationship with RSI and/or by conspiring with Rokstone to lure numerous employees to resign from RSI and to join Rokstone.

115. All of the foregoing constitutes a breach of Landrum's fiduciary obligations and duties to Plaintiffs.

23

CASE NO. 5:24-CV-00392

116. Landrum's intentional, malicious, willful, and wanton conduct has caused additional severe and permanent injury and damage to RSI in an amount to be determined but is in excess of the $75,000 jurisdictional limit of this Court.

## COUNT VI – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AS TO CHARLES LANDRUM AND CHASGATR CONSULTANTS, INC.

117. Plaintiffs incorporate by reference the allegations set forth within paragraphs 1 through 78 above as corresponding paragraphs 1 through 78 of this, Count VI, as if fully set forth herein.

118. The Agreement contains an implied covenant of good faith and fair dealing obligating Landrum and Chasgatr to act reasonably, fairly, and in good faith toward RSI in the performance of the Agreement.

119. The LLC Agreement, to which Landrum was bound as a member of RSI's Board, contains an implied covenant of good faith and fair dealing obligating Landrum to act reasonably, fairly, and in good faith toward RSI in the performance of his duties as Chief Underwriting Officer and a Board member.

120. Landrum and Chasgatr breached the covenant of good faith and fair dealing implied in the Agreement and LLC Agreement by:

    a. soliciting and/or attempting to solicit RSI's brokers, insureds, insurers, reinsurers, reinsurance brokers and other entities with

24

CASE NO. 5:24-CV-00392

whom RSI works to terminate their contractual and/or business relationships with RSI;

b. conspiring with Rokstone, and potentially other entities, to launch a sports and leisure program to compete directly with RSI;

c. disclosing trade secrets and Work Product to Rokstone, and potentially other entities; and

d. soliciting and/or attempting to solicit employees to terminate their employment relationship with RSI.

121. Landrum's and Chasgatr's intentional, malicious, willful, and wanton conduct has caused additional severe and permanent injury and damage to RSI in an amount to be determined but is in excess of the $75,000 jurisdictional threshold of this Court.

## COUNT VII – TORTIOUS INTERFERENCE AS TO ROKSTONE SPORTS AND LEISURE LLC

122. Plaintiffs incorporate by reference the allegations set forth within paragraphs 1 through 78 above as corresponding paragraphs 1 through 78 of this, Count VII, as if fully set forth herein.

123. RSI had a contractual and business relationship with Landrum and Chasgatr that prohibited Landrum and Chasgatr from soliciting or attempting to solicit RSI's brokers, insurers, reinsurers, reinsurance brokers, insureds and/or

CASE NO. 5:24-CV-00392

_____

employees for their own benefit and/or for the benefit of any third party, and from using and/or disclosing RSI confidential and trade secret information for their own benefit and/or for the benefit of any third party.

124.   RSI also has contractual and business relationships with brokers, insurers, reinsurers, reinsurance brokers and insureds.

125.   RSI also has contractual and business relationships with its employees.

126.   At all relevant times, Rokstone knew that RSI had contractual and business relationships with Landrum and Chasgatr.

127.   At all relevant times, Rokstone also knew that RSI had contractual and business relationships with brokers, insurers, reinsurers, reinsurance brokers, insureds and its employees.

128.   Rokstone tortiously interfered with RSI's contractual and business relationships by doing business with RSI's brokers, insurers, reinsurers, reinsurance brokers and insureds that were wrongfully solicited by Landrum and/or Chasgatr, or wrongfully solicited by Rokstone itself.

129.   Rokstone tortiously interfered with RSI's contractual and business relationships with Landrum and Chasgatr by acquiring, using and/or disclosing RSI confidential and/or trade secret information Landrum and Chasgatr were prohibited from using or disclosing.

CASE NO. 5:24-CV-00392

_____

130.    Rokstone interfered with RSI's contractual and business relationships with its employees by soliciting and/or by conspiring with Landrum and Chasgatr to solicit them away from RSI to work for Rokstone to launch a competing insurance program.

131.    Rokstone's interference with RSI's contractual and business relationships was intentional and unjustified.

132.    Rokstone intentionally, maliciously, willfully, and wantonly orchestrated the resignation of RSI employees in furtherance of its scheme to use RSI's confidential and proprietary information and trade secrets to launch a competing insurance program.

133.    Based upon the foregoing, Rokstone tortiously interfered with RSI's contractual and business relationships, which intentional conduct has caused additional severe and permanent injury and damage to RSI in an amount to be determined, but is in excess of the $75,000 jurisdictional threshold of this Court.

**COUNT VIII – BREACH OF INDIANA UNIFORM TRADE SECRETS ACT, IND. CODE ANN. § 24-2-3-1, *ET SEQ.*, AS TO ROKSTONE SPORTS AND LEISURE LLC**

134.    Plaintiffs incorporate by reference the allegations set forth within paragraphs 1 through 78 above as corresponding paragraphs 1 through 78 of this, Count VIII, as if fully set forth herein.

CASE NO. 5:24-CV-00392

135.  Rokstone has misappropriated and/or has threatened to misappropriate RSI's trade secrets.

136.  RSI derives independent economic value, actual or potential, from such information not being generally known to, and not being readily ascertainable by proper means.

137.  Such information is the subject of efforts reasonable under the circumstances to maintain its secrecy.

138.  Rokstone's misappropriation of RSI's trade secrets constitutes a violation of the Indiana Uniform Trade Secrets Act, Inc. Code Ann. § 24-2-3-1, *et seq*.

139.  RSI is entitled to an injunction to enjoin the threatened or actual misappropriation, as well as actual damages, exemplary damages for willful and malicious misappropriation, and attorneys' fees.

### COUNT IX – BREACH OF DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1832, *et seq.*, AS TO ROKSTONE SPORTS AND LEISURE LLC

140.  Plaintiffs incorporate by reference the allegations set forth within paragraphs 1 through 78 above as corresponding paragraphs 1 through 78 of this, Count IX, as if fully set forth herein.

141.  RSI possesses information of independent economic value that (a) was lawfully owned by RSI and (b) RSI took reasonable measures to keep secret.

28

CASE NO. 5:24-CV-00392

142.    Rokstone misappropriated, used and/or acquired such information despite a duty to maintain its secrecy, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq.*

143.    RSI is entitled to: (a) an injunction to enjoin the threatened or actual misappropriation of its trade secrets: (b) damages for actual loss caused by the misappropriation; (c) damages for unjust enrichment caused by the misappropriation; (d) damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the unauthorized disclosure of use of RSI's trade secrets; and (e) exemplary damages for willful and malicious misappropriation.

WHEREFORE, in addition to actual compensatory damages in an amount to be determined, Plaintiffs seek a temporary, preliminary and permanent injunction preventing and enjoining Defendants from:

1.    Calling or attempting to call on Plaintiffs' brokers, insurers, reinsurers, reinsurance brokers and insureds with whom Landrum and/or Chasgatr called on, did business with, or became acquainted with during Landrum's tenure at RSI;

2.    Soliciting or attempting to solicit brokers, insurers, reinsurers, reinsurance brokers and insureds with whom Landrum and/or Chasgatr called on, did business with, or became acquainted with during Landrum's tenure at RSI;

29

CASE NO. 5:24-CV-00392

3.      Doing business with or attempting to do business with brokers, insurers, reinsurers, reinsurance brokers and insureds with whom Landrum and/or Chasgatr called on, did business with, or became acquainted with during Landrum's tenure at RSI;

4.      Taking away or attempting to take away brokers, insurers, reinsurers, reinsurance brokers and insureds with whom Landrum and/or Chasgatr called on, did business with, or became acquainted with during Landrum's tenure at RSI;

5.      Using or disclosing RSI's trade secrets to Rokstone or any other third party;

6.      Using or disclosing RSI's confidential information and or documents to Rokstone or any other third party;

7.      Using or disclosing RSI's proprietary information or methodology to Rokstone or any other third party;

8.      Using or disclosing RSI's work product to Rokstone or any other third party; and

9.      Using or disclosing RSI's pricing algorithms, proprietary forms and/or endorsements to Rokstone or any other third party.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury as to all issues so triable.

CASE NO. 5:24-CV-00392

Dated:  August 13, 2024

Respectfully submitted,

By: */s/ Devang Desai*
Devang Desai, Esq. – FBN : 664421
ddesai@gaebemullen.com
ymarrero@gaebemullen.com
GAEBE, MULLEN, ANTONELLI &
DIMATTEO
420 South Dixie Highway, 3rd Floor
Coral Gables, Florida 33146
T. (305) 667-0223 / F. (305) 284-9844
*Attorneys for Renaissance Specialty Insurance,
LLC, The Renaissance Group, LLC &
Tradesman Program Managers, LLC*

By: */s/ Peter K. Rydel*
Peter K. Rydel, Esq. (PHV)
prydel@gerberciano.com
GERBER CIANO KELLY BRADY LLP
100 Corporate Place, Suite 210
Rocky Hill, CT  06067
T. (860) 333-8239 / F. (860) 516-9191
*Attorneys for Renaissance Specialty Insurance,
LLC, The Renaissance Group, LLC &
Tradesman Program Managers, LLC*

By: */s/ Eric Siegel*
Eric Siegel, Esq. (PHV)
esiegel@gerberciano.com
GERBER CIANO KELLY BRADY LLP
One Gateway Center, Suite 2600
Newark, NJ  07102
T. (862) 343-1776 / F. (646) 350-1901
*Attorneys for Renaissance Specialty Insurance,
LLC, The Renaissance Group, LLC &
Tradesman Program Managers, LLC*

31

CASE NO. 5:24-CV-00392

_____

## **VERIFICATION**

I declare under penalty of perjury that the factual allegations set forth in the foregoing are true and correct to the best of my knowledge and belief, except such allegations made on information and belief, which allegations I believe to be true.

Dated:        August 13, 2024

By: _____

Name: Daniel Hickey

Title: Owner

32

CASE NO. 5:24-CV-00392

---

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2024, I electronically filed the foregoing

document with the Clerk of the Court via CM/ECF and that it is being served on

all counsel of record identified below in the manner specified.

/s/ *Devang Desai*
Devang Desai

Jason Ryan Domark, Esq.
Cozen O'Connor
Southeast Financial Center
200 South Biscayne Blvd.
Suite 3000
Miami, FL 33131
305-358-2996
Email: jdomark@cozen.com
*VIA CM/ECF*

Ashley Lauren Gomez-Rodon, Esq.
Cozen O'Connor
Southeast Financial Center
200 South Biscayne Blvd, Suite 3000
Miami, FL 33131
305-704-5940
Email: agomez-rodon@cozen.com
*VIA CM/ECF*